# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IRRAHEEM OWENS, | |
| Plaintiff, | Civil Action No. 24-11222 (RMB/EAP) |
| v. | |
| MICHELLE JENEBY, *et al.*, | **OPINION** |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

**THIS MATTER** comes before the Court upon the filing of a Complaint [Docket No. 1] and Applications to Proceed *in forma pauperis* ("IFP") [Docket Nos. 1-2, 5] by *pro se* Plaintiff Irraheem Owens. Plaintiff has also filed a series of additional submissions in the above-captioned matter.[1] Despite the Court not yet

---

[1] These include: "Amendment to Complaint with Criminal Complaint attached" [Docket No. 3]; "Exhibit E.1.1.7" [Docket No. 4]; "Exhibit H.3" [Docket No. 6]; "Fee waiver granted by Superior Court" [Docket No. 7], "Exhibit E 1.1.6" [Docket No. 8]; "Amended Continuation of Exhibit E 1.1.6" [Docket No. 12]; "Amended 1-27-2025 Table of Exhibits for the RICO Claim" [Docket No. 13]; "Continuation of Exhibit E 1.1.6" [Docket No. 14]; "Submission of Exhibit G.6 and list of exhibits included on flash drive" [Docket No. 16]; "Part 4.7.1 of 7 Continued from Part 4 of 7, of the RICO Claim" [Docket No. 17]; and "7 Pages Revised Part 4.7.1 of 7, Amendment of the Confidential Witness List" [Docket No. 18]; and "Table of Exhibits of the exhibits in the April 08, 2025 Certificate of Service also Known as a Critical Briefing that's also accessible in this case by Federal Aviation regulators, and the NTSB" [Docket No. 20]. The Court notes, per the various Clerk's Quality Control Messages on the docket for this matter, that Plaintiff has attempted to submit additional documents in formats not accepted by ECF and/or that were oversized. Plaintiff's submissions on the docket total over 2,500 pages.

having addressed Plaintiff's IFP application or Complaint, certain Defendants have entered appearances in the above-captioned matter. On May 7, 2025, Defendants Judge Benjamin Telsey, A.J.S.C., Ashley Wolk, Anita Escobar, Tawana Perkins, and Denise Khoury (the "Judiciary Defendants") filed a letter pursuant to this Court's Individual Rules and Procedures regarding a proposed motion to dismiss the Complaint [Docket No. 24]. In light of this Court's rulings herein, no responsive pleading is required at this time.

## I. IFP APPLICATION

Pursuant to Local Civil Rule 54.3, "the Clerk shall not be required to enter any suit, file any paper, issue any process, or render any other service for which a fee is prescribed . . . unless the fee is paid in advance."[2] Under certain circumstances, however, this Court may permit an indigent plaintiff to proceed *in forma pauperis.*

Pursuant to 28 U.S.C. § 1915(a)(1), a court may permit a litigant to proceed without prepayment of fees if she submits a proper IFP application and establishes that she is unable to pay the requisite fees. The IFP application must include "an affidavit stating all income and assets" to establish that the applicant is unable to pay the requisite fees. *Martinez v. Harrison*, Civ. A. No. 23-03513 (JXN) (MAH), 2023 WL 5237130, at *1 (D.N.J. Aug. 15, 2023).[3] Failure to do so renders an IFP application

---

[2] The entire fee to be paid in advance of filing a civil complaint is $405. That fee includes a filing fee of $350 plus an administrative fee of $55.

[3] While Section 1915 refers to "prisoners," federal courts permit non-prisoners to file IFP applications under the same statute. *Roy v. Penn. Nat'l Ins. Co.*, Civil No. 14-4277, 2014 WL 4104979, at *1 n.1 (D.N.J. Aug. 19, 2014) (collecting cases).

incomplete. *McKinney v. Garland*, No. 25CV2210 (EP), 2025 WL 1180377, at *1 7(D.N.J. Apr. 22, 2025). The decision to grant or deny an IFP application is committed to the sound discretion of the district court. *See Cotto v. Tennis*, 369 F. App'x 321, 322 (3d Cir. 2010).

Rather than complete the IFP application form provided by the district court, Plaintiff submitted an unsworn document captioned "Affidavit of No Substantial Changes in Finances for Plaintiff" [Docket No. 1-2], stating that her financial situation has not changed since the New Jersey Superior Court in Gloucester County granted her fee waiver. Plaintiff cited Rule 2:7-4 (Relief in Subsequent Courts) of the New Jersey Rules of Court and appended a fee waiver application submitted by Plaintiff in New Jersey Superior Court on January 9, 2023, and the state court order waiving filing fees issued on January 10, 2024. [*Id.* at 3–4.]

Plaintiff later filed a blank long form IFP application form (AO 239) [Docket No. 5]. The form informs applicants to: "[c]omplete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response." Despite these clear instructions, Plaintiff did not complete a single box of the form. Instead, at the top and bottom of each page, she typed: "The 2-page previous application that was granted is attached in accordance with Rule 2:7-4, (Relief in Subsequent Courts) with a sworn statement, also with the order granting the relief, see Exhibit, H.3. Rule 2:7-4 state's [sic] that a new application isn't required." [*See id.*]

As a preliminary matter, Rule 2:7-4 governs appellate practice in the New Jersey Supreme Court and the Appellate Division of the Superior Court and is therefore inapplicable to this federal court action. *See* N.J. Ct. R. 2:1. A new application must be completed. That Plaintiff applied for a fee waiver in a separate case in state court over two years ago and was granted a fee waiver by that state court a year later has no bearing as to whether this Court should grant Plaintiff IFP status at this time.

Additionally, the state court fee waiver application states that Plaintiff has no income and no assets whatsoever. She claims that she is eligible for public assistance and received at least one emergency welfare payment, but the amount of that payment is not disclosed. Plaintiff claims that "[w]elfare isn't income" so she did not disclose it. [*Id.* at 3.] Yet public assistance, such as welfare, is specifically required to be disclosed on the long form IFP application provided by the district court.[4] Further, Plaintiff provides no information concerning her expenses.

While Section 1915 "is designed to ensure that indigent litigants have meaningful access to the federal courts," *Neitzke v. Williams*, 490 U.S. 319, 324 (1989), proceeding IFP "is a privilege, not a constitutional right." *Atl. Cnty. Cent. Mun. Ct. Inc. v. Bey*, No. Civ. A. No. 24-0105 (KMW-SAK), 2024 WL 1256450, at *1 (D.N.J. Mar. 25, 2024). "Failure to submit a completed financial affidavit renders an IFP

---

[4] Plaintiff provides no information about how she supports herself. If Plaintiff receives public assistance, she must disclose this in her IFP application. If Plaintiff is supported or assisted by another person, that person's income, assets, and expenses must be disclosed so that the Court may consider that person's ability to pay the filing fee. *See Est. of Robertson v. City of Jersey City*, No. 23cv835 (EP) (LDW), 2023 WL 3043638, at *1 (D.N.J. Apr. 21, 2023) (collecting cases).

application incomplete and this defect warrants the application's denial." *Id.* (citing *Rohn v. Johnston*, 415 F. App'x 353, 355 (3d Cir. 2011)).

Based upon Plaintiff's submissions, the Court cannot properly determine Plaintiff's financial status and whether she is eligible to proceed IFP and, accordingly, the Court will deny her IFP application without prejudice. *See, e.g.*, *McKinney*, 2025 WL 1180377, at *1 n.1 (denying IFP application where plaintiff did not use court-provided form and did not provide sufficient information as to assets and expenses for court to determine financial eligibility); *Mawalla v. Lakewood Police Dep't*, Civ. A. No. 23-1083 (RK) (DEA), 2023 WL 5985176, at *2 (D.N.J. Sept. 14, 2023) (denying IFP application without prejudice where plaintiff did not complete all boxes on IFP form and plaintiff's submission contained inconsistencies); *Rentas v. New Jersey State Parole Bd.*, No. 1:20-CV-737-NLH-KMW, 2020 WL 423406, at *1 (D.N.J. Jan. 27, 2020) (requiring plaintiff to complete IFP application "in full before the Court can consider it"). Plaintiff may submit a completed IFP application, using the form provided by the district court, within thirty (30) days, or pay the filing fee.

## II.    *SUA SPONTE* DISMISSAL

Although the Court has denied Plaintiff's IFP application, the Court will nonetheless review the merits of the Complaint. *See Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (holding that "a court has the authority to dismiss a case at any time, regardless of the status of a filing fee; that is, a court has the discretion to consider the merits of a case and evaluate an IFP application in either order or even

simultaneously.") (internal citation omitted). Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court reviewing a complaint filed IFP must dismiss claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This requirement, however, does not excuse *pro se* plaintiffs from pleading the essential elements of their claims or otherwise conforming to the standard rules of civil procedure. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (a plaintiff is "not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se.").

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 further requires that the complaint's allegations be "simple, concise, and direct." FED. R. CIV. P. 8(d). "A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8, but dismissal 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Tillio v. Spiess*, 441 F. App'x 109, 110 (3d Cir. 2011) (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995)).

The Court finds this to be one of those cases. Plaintiff has submitted over 2,500 rambling pages for this Court's review. This does not satisfy the "short and plain

6

statement" requirement of Rule 8. To the contrary, it is so "incomprehensible," and "rambling and unclear" as to defy a response. *See Tillio*, 441 F. App'x at 110; *Scibelli v. Lebanon Cnty.*, 219 F. App'x 221, 222 (3d Cir. 2007).

The Court struggled to understand even the gist of Plaintiff's claims. Her submissions are so voluminous and convoluted that the Court does not attempt to summarize the entirety in this Opinion. The Court, however, includes certain representative allegations and themes from Plaintiff's submissions. Plaintiff attempts to bring a civil rights action against various federal, state, and local officials, as well as – it seems – private individuals. She appears to contest certain state court actions in which she was involved in New Jersey, Delaware, and Georgia. [Docket No. 1 at 4.] Plaintiff also claims that certain defendants engaged in "computer crimes" by sending emails to Plaintiff "across the wire through blacklisted Treasury Servers & other blacklisted email servers/IPs of cross-tenants." [*Id.* at 8.] Plaintiff's allegations continue:

> The defendants are profiting from their schemes of using modified court orders with fake complaint numbers as they paid detention center guards with money and with unauthorized sexual access to female inmates under the color of law while the females were asleep under their armor. The defendants committed their aforementioned crimes in exchange for Treasury Servers; Hyperion Servers; and data associated with the inmates' usernames that were created in Active Directory and other databases for undisclosed uses of Treasury Servers/Hyperion Servers during the female's employment while physically working at companies, and in exchange to illegally hold victims as they abused victims until their demands are met (that's the seriousness of the judicial complaints I filed against the judge(s). I received several demands that if I don't give them the white paper password; and that if I don't delete evidence of the person who broke into my townhouse in Delaware more than once from approx. 2013-2015: that they will continue to impede my legitimate complaints of

> several heinous brutal crimes, and that they will slander me so badly; that I will not be able to obtain a job that isn't under their direction and control . . . , and that I will remain broke and homeless and they will labor traffic/human traffic me again.

[*Id.* at 10 (all errors in original).]

Plaintiff also includes allegations relating to her relatives and sexual assault that are unintelligible. For example, Plaintiff alleges:

> Per Exhibit, A.5, on December 27, 1999; under the section of the civil claim entitled 'Third Party Interest, ETC' my biological father specifically stated that he relegates' the rights of his claims to be prosecuted by and on behalf of me and of others, however; pertaining to the 'others' that are not his heirs, he put their names there because someone lied to him when they said that they are 'related' to me and to my biological father; they also lied to my biological father when they stated that I allegedly 'gave birth to my son while married to his father', however; that isn't true since I have never been married, and therefore; my son's father isn't a relative of my biological family; he's one of the suspects. My son's father raped me when I was 12 years of age; my biological father didn't know that fact when he wrote what others manipulated him to believe while he wasn't around; per page 17 of his original $100,000,000 claim (that's One Hundred Million Dollars of relief he sought that the courts in Maryland granted and then the judge in that case stated that he received that relief, however; neither I or my biological father received any of that One Hundred Million Dollars.

[*Id.* at 13 (all errors in original).]

Plaintiff also alleges that she and others were sexually assaulted at some point in time while in custody, but the Court cannot discern when or where this occurred or who was involved:

> Michelle Jeneby isn't oblivious to the fact that male guards/ staff are also raping Caucasian women and men under the color of law; Asians; Chinese; Indians; and Caucasian Teens while holding them against their will in the same state-owned, government-owned, government-run buildings with us adults including the adult Caucasian woman the last name of CoPepper (They are not just underprivileged Caucasians who are also being brutally raped as they sleep in locked rooms). The

8

> pompous non-pundits who often times say 'So What', and 'Bull S __ t' although they know that the aforementioned is true; their mentalities are too superior to openly acknowledge or address those truths.  The rapists have the custodial power to do those things, therefore; IT'S NOT one logical reason why the pompous ones could possible think that their breed of people aren't subject to the same type of physical sexual abuse that violates federal law including PREA statutes.

[*Id.* at 22–23 (all errors in original).] Plaintiff continues that a woman crushed glass in her eye and that she was abused by medical staff at some point:

> 2. One of the female staff persons brutally physically assaulted me under the color of law when she injured my face.
>
> 3. The recent assault that happened to me when the fatal attraction obsessed jealous woman threw crushed glass in my eyes while I was asleep; she is the same person as the jealous woman who did what she did to me when she put a fake life sentence/fake death sentence in the judicial system that doesn't have a trial anywhere in its history.  I never had a criminal charge or accusation of such seriousness.
>
> 4. Mentioned later in this document are the heinous physical assaults medical staff of penal systems intentionally inflicted on my sexual body parts at a hospital while I wasn't a prisoner when I was a minor and also after I became an adult (that is related to some of the defendants in this case, however; it is also a part of a malpractice claim).

[*Id.* at 23.]

As far as the Court can discern, the Complaint also includes allegations that Plaintiff worked on NASA contracts but at some point, for some unclear reason, she was no longer able to do so.  She claims that she was trafficked and forced into poverty:

> Hence, Most Project Managers Aren't Typically Technical In Nature No Matter How Long They Were Working Under Portions of NASA Contracts, including working during this silent cyber war of which I was deceived into fighting on the front line against cyber warfare.  During that time period; I chose to help the United States although I had the option of choosing to help others; I didn't; although I was thrown into it without being informed.  The human trafficking aspect of it is that they didn't let me earn a living after I left those companies and before I was forced to strive to survive in GA.  Others allowed it; they observed the

> poverty; they didn't put a stop to it; they did that without providing equal protection that was provided to others who did the same type of work as I.
>
> As a matter of fact; they intentionally impeded food; they are still doing that to me; they also watched while they allowed those type of hate crimes of racists and of the hate crimes of the jealous; obsessed; fatal attraction woman who won't leave me alone.
>
> There isn't a logical reason why I, as a talented; respectful; vibrant professional whose not a drug-addict, whose afraid of illicit drugs; whose supportive of the United States; whom didn't have a record; there isn't a logical reason why I shouldn't have been able to earn a living. Independent of the deceptive employment contracts that misled me; and pertaining to all of those years they intermittently had me officially working for the government as a contract employee; any accusations didn't matter while they were benefiting from my presence at those government entities.  They still used me regardless of any alleged accusations; they also used me without paying me after I left those companies.

[*Id.* at 49–50 (all errors in original).]  Plaintiff appends dozens of pages of emails dating from 2013 to 2014 relating to servers, IP addresses, and other technical terms. [*See, e.g.*, Docket No. 1-6 at 69–89.]

Plaintiff also filed a supplemental submission styled as an "Amended Civil Complaint" that claims to include "new criminal charges on behalf of the victim Irraheem Owens, in the matter of Irraheem Owens." [Docket No. 3 at 1.]  The document describes a number of federal criminal statutes relating to RICO predicate offenses, war crimes and the use of child soldiers, and various "Capital Crimes." [*Id.* at 3–4.]  Plaintiff claims she was involved in several armed conflicts. [*Id.* at 4–5.] Plaintiff then describes some sort of romantic entanglement gone wrong with Ernest Bethrant, a named Defendant in this action, who she claims conspired against her in some fashion:

10

Ernest Bethrant's name is listed as a Defendant in the associated civil claim for his association with the persons who harmed me, and his participation in it, if any; while I was oblivious to any evidence that he is associated with people who are closely associated with the persons who alleged they're my biological family such as Gary Nelson's wife since back then, in 2013-2014;

I had no way of knowing what Tara D. Nelson's husband's or ex-husband's name is Gary. As a matter of fact, it was only this year that I discovered that Gary's last name is Nelson. Tara D. Nelson is the person identified in my father's book on the Acknowledgement in Exhibit, 7.A. Ernest Bethrant didn't disclose Gary's last name to me when he mentioned him 2014 as he stated that he has a friend named Gary who he was helping move heavy furniture; and since Ernest Bethrant didn't disclose that to me; I wasn't able to make an informed decision as to whether or not to continue allowing Ernest Bethrant to be romantic while treating me to dinner at restaurants, movies, etcetera on a regular basis after he approached me for the first time on Black Friday in 2013 while I was under the impression that he was a normal guy who isn't a judicial officer; or that he's someone who doesn't work for or with prison officials; etcetera. I didn't let Ernest Bethrant have sexual intercourse with me; when he asked I said no. If Ernest Bethrant would have mentioned the last name 'Nelson' to me; I would have promptly asked: 'how are you associated with people who have the same last name as my Cousin Tara D. Nelson?', and based on his answer; I would have been able to ask follow-up questions; this is critical for this case because since Ernest Bethrant knew that Tara D. Nelson is the same person who alleged to be my biological cousin before Ernest Bethrant approached me when he introduced himself to me in 2013 on Black Friday; that means they conspired together to deceive me which contributed to the long previous 10 years of me being in severe poverty through no fault of my own, as it relates to them and or their associates having stake or involvement in the assets at The World Bank/IFC, and at SunGuard/DuPont/ACS/FCS. I haven't seen him or talked to Ernest Bethrant in more than 10 years.

Ernest Bethrant also didn't tell me if he's associated with any work I ever did; or with any judges or others in law enforcement and or anyone else I ever met before he approached me. Unless Ernest Bethrant can prove things contrary to the aforementioned; he will remain a defendant in these Tort Claims; not only for being associated with those who harmed me physically, however; for the pain and suffering I am enduring as a result of financial losses after others took advantage of my compassion; and my obliviousness; and for the physical harm that happened to as a

11

> result of his negligence and non-disclosure of his association with those in powerful position who used such power to harm me while reacting to their personal feelings. Remember that I didn't approach Ernest Bethrant on the day we met; he approached me. I am not the person how owes devotion to a woman I don't even know exists, with that having been said:
>
> Ernest Bethrant never acknowledged the name of his ex. That woman, whoever she is; she is an obsessed fatal attraction jealous person who holds judicial power within law enforcement. Ernest Bethrant is also responsible for that portion of damages including the fake charges that harmed me.

[*Id.* at 42–43 (all errors in original).] More decades-old emails are included, as are bank statements from 2013. [*See, e.g.*, Docket No. 8 at 242–73, 274–303; Docket No. 22 at 110–36.]

"A complaint that reads like a plaintiff's personal 'diary' and is 'rambling and confusing' does not meet the standard under Rule 8(a)(2)." *Blount v. TD Bank, N.A.*, No. 12-18805, 2022 WL 4354640, at *2 (D.N.J. Sept. 20, 2022) (quoting *Pilkey v. Lappin*, No. 05-5314, 2006 WL 1797756, at *1 (D.N.J. June 26, 2006)). To say that Plaintiff's missives are incomprehensible, rambling, and confusing is an understatement. The purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's filings are "replete with confusing, erratic, and convoluted paragraphs that do not make clear to the Court, much less any Defendant, what claims Plaintiff is putting forth and what relief [she] seeks." *Vaughn:Douce v. New Jersey Div. of Child Prot. & Permanency*, No. 23-21737 (RK) (TJB), 2024 WL 4771356, at *4 (D.N.J. Nov. 13, 2024). Accordingly, because Plaintiff has not complied with

Rule 8, the Court will dismiss the Complaint in its entirety without prejudice.[5] Plaintiff shall have thirty (30) days to file an amended pleading that complies with the dictates of Rule 8.

### III.    CONCLUSION

For the reasons stated herein, Plaintiff's IFP application will be **DENIED WITHOUT PREJUDICE**.  Upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's Complaint will be **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall have thirty (30) days to either pay the requisite filing fee or submit a complete application to proceed IFP along with an amended complaint that corrects the deficiencies identified herein.  Should she fail to timely do so, this matter will be dismissed with prejudice.  An appropriate Order shall issue on this date.


Dated: <u>May 14, 2025</u>                                  **s/Renée Marie Bumb**
                                                                          RENÉE MARIE BUMB
                                                                          Chief United States District Judge

---

[5] There are "likely alternative grounds to dismiss this suit, but the Complaint's allegations are so difficult to make out that it is impossible to clearly identify the exact claims and facts at issue."  *See Vaughn:Douce*, 2024 WL 4771356, at *4 n.6.  For example, as the Judiciary Defendants point out in their letter, various Defendants are likely entitled to judicial or other types of immunity from suit.  [Docket No. 24 at 3.]